COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH



NO. 2-09-145-CV

IN THE INTEREST OF T.M., D.M., JR.,
C.M. A/K/A S.M., AND D.M., CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION[1]

------------

Appellant D.M. (Father) appeals the trial court's order that terminated his parental rights to four of his children.[2]  In seven points, he argues that the evidence is legally and factually insufficient to support any statutory basis for terminating his rights and that the trial court abused its discretion by denying his motion for continuance.  We affirm.

---

[1]  See Tex. R. App. P. 47.4.

[2]  To protect the privacy of the parties involved in this appeal, we identify them by initials only.  See Tex. R. App. P. 9.8(b); Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008).

Background Facts

Father and T.M. (Mother) are the parents of the children who are subject to this suit—T.M., D.M., Jr., C.M. a/k/a/ S.M., and D.M.[3] Father moved to Pennsylvania in May 2007, and in August 2007, he and Mother left the children with Mother's cousin (Cousin) in Texas. Father said that he was moving to Pennsylvania just for the summer to sell newspapers and that he would come back to Texas "before school started." He occasionally called the children, but he never visited them. He sent the children money "a couple of times."

In December 2007, because Cousin could not adequately meet the children's needs, they went to stay with Father's mother (Grandmother). Grandmother began to have financial and marital problems, and in June 2008, she brought the children to the Department of Family and Protective Services (the Department) because she believed that she could not care for them any longer.

After Grandmother gave the children to the Department, it filed its original petition; at that time, the children's ages ranged from three to eight. In the original petition and in an amended petition, the Department alleged that it had made reasonable efforts to reunify the children with Father and that Father had

---

[3] ... Father has another child who is not involved in this appeal.

2

constructively abandoned the children. Thus, the Department asked the trial court to terminate Father's rights if reunification could not be achieved. An affidavit attached to the Department's original petition detailed Father's failure to return from Pennsylvania despite his representations that he would do so and his failure to leave proper medical documents about the children. The trial court entered an order naming the Department as the children's temporary sole managing conservator.

In July 2008, the Department filed its initial service plans (including a separate plan for each of the children and a comprehensive "Family Service Plan"). The service plans explained that the Department's goal remained to be reunification but that the children had basic needs including food, shelter, supervision, routine medical care, and a safe home environment. The initial and subsequent service plans asked Father to, among other tasks, demonstrate responsibility in parenting, visit the children as much as possible, complete a psychological evaluation, and participate in drug assessments, random drug tests, and parenting classes.[4]

---

[4] The record indicates that Mother has abused drugs, but it does not show Father's drug history. The Department identified a location in Pennsylvania that could provide parenting classes.

3

The Department scheduled a family group conference for July 31, 2008, and it told Father that it would pay for his bus ticket to Texas to attend the conference and visit the children. However, Father did not attend the conference; instead, he participated in the conference by telephone. During the conference call, Father expressed anger toward the Department and his family, and he was "vulgar, very confrontational, [and] not cooperative at all. [The conference facilitator] had to actually take him off of speakerphone a couple of times."

In November 2008, the Department opined that Father had "essentially abandoned" his children by moving to Pennsylvania and by failing to move back to Texas or visit his children despite the Department's requests that he do so. A progress report filed by the Department indicated that in November 2008, the children had minimal phone contact with Father but that his phone number was frequently disconnected and that he did not maintain contact with the Department. By that time, the children had expressed that they did not wish to leave their foster home.

In January 2009, after the trial court granted Father's and Mother's motions for continuance of the termination trial, the trial court entered an order that required Father to complete several tasks by specified dates (such as taking drug tests and participating in parenting classes) and that designated

4

April 27 as the new trial date. The Department's goal changed from reunification with Father and Mother to permanently placing the children with another family through adoption.

Father never completed any of the services requested by the Department.[5] Despite the Department's telling him that he needed to see his children and Father's multiple statements in 2008 and 2009 to the Department and to the children that he was going to move back to Texas, Father never saw the children after moving to Pennsylvania in 2007.[6] Meanwhile, the children lived with a loving foster mother—who planned to adopt them—in a home with a safe and stable environment.

In April 2009, the trial court entered an order that terminated the parents' rights to the children on multiple grounds, including constructive abandonment.[7] Father filed his notice of this appeal.

---

[5]... Father took a pyschological evaluation but did not sign a release to allow the Department to view the results of the evaluation despite the Department's several requests that he do so.

[6]... The Department's caseworker testified that Father "emotionally manipulated" the children by falsely telling them that he would come home for Christmas and that he would send them Christmas and birthday presents.

[7]... The termination of Mother's parental rights is not at issue in this appeal.

5

Evidentiary Sufficiency

In his first six points, Father contends that the evidence is insufficient to support a statutory basis for terminating his rights to the children. Specifically, in his third and fourth points, he asserts that the evidence is legally and factually insufficient to show that he constructively abandoned the children under section 161.001(1)(N) of the family code. *See* Tex. Fam. Code Ann. § 161.001(1)(N) (Vernon Supp. 2009).

Standard of review and applicable law

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the

6

child's right to inherit.  Tex. Fam. Code Ann. § 161.206(b) (Vernon 2008);

*Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize

termination proceedings and strictly construe involuntary termination statutes

in favor of the parent.  *Holick*, 685 S.W.2d at 20–21; *In re M.C.T.*, 250

S.W.3d 161, 167 (Tex. App.—Fort Worth 2008, no pet.).

In proceedings to terminate the parent-child relationship brought under

section 161.001 of the family code, the petitioner must establish one ground

listed under subdivision (1) of the statute and must also prove that termination

is in the best interest of the child.[8]  Tex. Fam. Code Ann. § 161.001; *In re J.L.*,

163 S.W.3d 79, 84 (Tex. 2005).  Termination decisions must be supported by

clear and convincing evidence.  Tex. Fam. Code Ann. §§ 161.001, 161.206(a).

Evidence is clear and convincing if it "will produce in the mind of the trier of

fact a firm belief or conviction as to the truth of the allegations sought to be

established." *Id.* § 101.007 (Vernon 2008).

In reviewing the evidence for legal sufficiency in parental termination

cases, we must determine whether the evidence is such that a factfinder could

reasonably form a firm belief or conviction that the grounds for termination

were proven.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).  We must

---

[8] Father does not argue that termination of his rights was not in the children's best interests.

review all the evidence in the light most favorable to the finding and judgment. *Id.* In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that Father violated section 161.001(1)(N). *See C.H.*, 89 S.W.3d at 25, 28–29.

A trial court may terminate a parent's rights to a child on the ground of constructive abandonment if it finds by clear and convincing evidence that (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. *See* Tex. Fam. Code Ann. § 161.001(1)(N); *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *In re J.J.O.*, 131 S.W.3d 618, 628 (Tex. App.—Fort Worth 2004, no pet.); *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.).

Analysis

Father asserts that the evidence is insufficient to prove that he did not maintain significant contact with the children or that he demonstrated an inability to provide them with a safe environment. He does not dispute that the Department had conservatorship of the children for at least six months or that the Department made reasonable efforts to return the children to him.

The evidence conclusively establishes that Father did not see the children for almost two years preceding the trial. Although Father asserts that face to face visits were "impracticable" and the evidence establishes that Father talked to the children some on the telephone,[9] the evidence also shows that the frequency of his communication with them was sporadic and that the quality of his communication with them was anything but significant; it was misleading and counterproductive. *See J.J.O.*, 131 S.W.3d at 628–29 (analyzing both the quantity and quality of a mother's visits in a constructive abandonment analysis).

For instance, in the winter of 2007 and spring of 2008, Father did not communicate with the children in any way. In the latter part of 2008 and in the

---

[9] ... Father has not cited any cases in which a court held that a parent who had the ability to visit a child but did not make any visits nonetheless maintained significant contact with the child.

early part of 2009, he called the children periodically,[10] but according to a report by Court Appointed Special Advocates (CASA), the children "spoke of the calls in a blasé tone and seemed to shrug them off."

During the phone calls, Father promised the children that he would visit them and that he would move back to Texas. Father last spoke with the children on February 16, 2009, more than two months before the termination trial. The children's behavior at school improved after Father's last phone call.

Father relies on *In re K.W.* to propose that regular contact between a parent and a Department caseworker negates a claim of constructive abandonment. 138 S.W.3d 420, 432 (Tex. App.—Fort Worth 2004, pet. denied). But our opinion in *K.W.* does not contain any statement directly adopting that holding. *See id.* Also, in *K.W.*, we were reviewing termination of the parental rights of a father who had been incarcerated for the entire time that the termination suit was pending and whose contact options with his child were therefore necessarily limited. *See id.* at 423. Here, there is no evidence that Father's opportunities to visit the children were similarly limited; instead,

---

[10] Father called the children twenty to twenty-five times during the course of the Department's case, which lasted for more than ten months. The children's attorney ad litem told the trial court that Father's calls and false promises to the children made them "cry week after week after week."

the evidence indicated that Father rejected a trip to Texas to visit the children at the Department's expense.

We conclude that a factfinder could reasonably form a firm belief or conviction that Father did not maintain significant contact with the children, and we therefore hold that the evidence detailed above is legally and factually sufficient in that regard. *See* Tex. Fam. Code Ann. § 161.001(1)(N)(ii); *J.P.B.*, 180 S.W.3d at 573; *C.H.*, 89 S.W.3d at 25, 28–29; *M.R.J.M.*, 280 S.W.3d at 505–06 (holding that there was no significant contact with a child although the parent visited and wrote letters to the child); *J.J.O.*, 131 S.W.3d at 628–29 (holding that the evidence was legally and factually sufficient to show that the mother did not maintain significant contact although she visited her child twelve times during a nine-month service plan); *In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.) (holding that the evidence was legally sufficient on constructive abandonment although the mother intermittently visited her child).

Next, Father contends that the evidence is legally and factually insufficient to show that he demonstrated an inability to provide the children with a safe environment. He argues, "There is no evidence concerning [his] present residence. Further, the children resided with Appellant in the past, and

there is no indication that Appellant failed to provide a safe environment during those periods."

However, the record does not contain any indication that Father wanted the children to live with him in Pennsylvania; instead, Father's acts show the opposite. The Department tried to complete a home study to see if the children could live with Father in Pennsylvania, but Father never returned numerous phone calls or a letter related to the study. Father's acts also show that he did not have any legitimate plan to live with the children elsewhere; he lied on several occasions about moving back to Texas.

Father failed to complete any parts of the service plans despite being ordered to do so by the trial court and being advised orally and in writing that completion of the plans was important to help address the circumstances that led to the Department having custody of the children and to show the Department that he could care for the children. The record does not contain evidence of any attempt by Father to find a place for the children to live or someone to provide for their needs after Grandmother took them to the Department in June 2008. The record also does not show that Father gave the children's foster mother money to assist her in caring for the children or otherwise supported the children in any way from Grandmother's delivery of the children to the Department until the trial in April 2009.

12

Thus, the evidence establishes Father's inability to provide the children with *any* environment (in Pennsylvania or in Texas) much less a *safe* environment, and the evidence is therefore legally and factually sufficient as to the "safe environment" element of constructive abandonment. *See* Tex. Fam. Code Ann. § 161.001(1)(N)(iii); *M.C. v. Tex. Dep't of Family and Protective Servs.*, No. 08-08-00053-CV, 2009 WL 3450987, at *3 (Tex. App.—El Paso Oct. 28, 2009, pet. denied) (holding that evidence was sufficient to show that a mother could not provide a child with a safe environment when the mother, among other things, did not provide for the child's necessities and had no permanent housing in which the child could reside with her).

Because we hold that the evidence is legally and factually sufficient to support the constructive abandonment ground for terminating Father's rights, we overrule Father's third and fourth points. We will not address Father's first, second, fifth, and sixth points, which relate to the sufficiency of the evidence to support alternative statutory grounds for termination. *See* Tex. R. App. P. 47.1; *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.) (explaining that along with a best interest finding, a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination); *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied) (explaining that "to be successful on appeal, the appellant must

establish that the . . . findings on all of the [Department's] pleaded grounds are unsupported by the evidence").

### Denial of Father's Motion for Continuance

In his seventh point, Father argues that the trial court erred by denying the motion for continuance that he filed on the day of trial. Father's motion asserted that he believed that trial had been reset for April 30 because he received notice of a permanency hearing set for that day. The trial court denied Father's motion, and the parties presented their cases without Father's or Mother's attendance at trial.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002); *In re Z.C.*, 280 S.W.3d 470, 478 (Tex. App.—Fort Worth 2009, pet. denied). We do not substitute our judgment for that of the trial court. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). Instead, we must determine whether the trial court's action was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The test is whether the trial court acted without reference to guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

14

The absence of a party to a proceeding is not an adequate ground for a continuance unless the party shows that it had a reasonable excuse for not being present and that its absence resulted in prejudice. *Erback v. Donald*, 170 S.W.2d 289, 291–92 (Tex. Civ. App.—Fort Worth 1943, writ ref'd w.o.m.); *see* Tex. R. App. P. 44.1(a); *Commercial Standard Ins. Co. v. Merit Clothing Co.*, 377 S.W.2d 179, 181 (Tex. 1964) (holding that the trial court did not abuse its discretion by overruling a motion for continuance because, in part, the record did not reflect any harm); *Ngo v. Ngo*, 133 S.W.3d 688, 693 (Tex. App.—Corpus Christi 2003, no pet.); *Richards v. Schion*, 969 S.W.2d 131, 132 (Tex. App.—Houston [1st Dist.] 1998, no pet.). When the movant seeks a continuance because of an absent witness, it must show the materiality of the absent witness's testimony. Tex. R. Civ. P. 252; *Fountain v. Knebel*, 45 S.W.3d 736, 739 (Tex. App.—Dallas 2001, no pet.); *Humphrey v. Ahlschlager*, 778 S.W.2d 480, 483 (Tex. App.—Dallas 1989, no writ).

The entirety of Father's motion for continuance at trial and the majority of Father's argument in his brief on his seventh point concerns the reason why he was absent from trial. But under the authority cited above, even if his absence was reasonable, he must show prejudice, and his brief only concisely concludes, "[Father] could not assist his attorney in questioning [the Department's] witnesses, and [Father] could not provide his own testimony."

15

Father did not show by affidavit (or otherwise) at trial and has not shown on appeal that he would have testified to facts that are contrary to or that are mitigating from the testimony offered by the Department's sole witness. He also has not explained how, beyond offering his own testimony, his presence at trial would have potentially changed the trial court's termination decision. Thus, under the standards described above, because Father has not demonstrated that his absence and the denial of his continuance motion resulted in prejudice, we overrule his seventh point.

## Conclusion

Having overruled all of Father's dispositive points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DELIVERED: December 31, 2009