In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00362-CV
_____


IN THE INTEREST OF K.R. AND K.B.


On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. F-215,647


**MEMORANDUM OPINION**

L.R. challenges the legal and factual sufficiency of the evidence and claims she was denied counsel in her appeal of the termination of her parental rights to her children, K.R. and K.B. We affirm the trial court's judgment.

Background

K.R. and K.B. were removed by the Texas Department of Family and Protective Services on June 13, 2012, after L.R. and the children's father, D.B., were arrested in Jefferson County when they were among persons who were caught transporting marijuana and cocaine. The children were present in the

1

vehicle with L.R. and the marijuana. The Department served citation on L.R. in the jail, but she was released on bail pending trial for possession of marijuana, possession of a controlled substance, and money laundering and was not incarcerated at the time of the trial in this case. L.R. personally appeared at preliminary hearings, but she neither filed a written answer nor personally appeared at the trial. The trial court found multiple grounds for terminating L.R.'s parental rights, and further found that termination would be in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001 (1) (D), (E), (N), (O), (P), (2) (West Supp. 2013).[1]

Jurisdiction

The Department contends that L.R. failed to timely perfect her appeal. L.R. filed a notice of appeal on May 23, 2013, too late for perfecting an accelerated appeal and beyond the time that this Court is authorized to grant an extension for filing a notice of appeal. *See* Tex. R. App. P. 26.1(b), 26.3. Because L.R. neither participated, either in person or through counsel, in the hearing that resulted in the termination of her rights, nor filed a timely post-judgment motion or a timely notice of appeal, L.R. may pursue a restricted appeal. *See* Tex. R. App. P. 30. A

---

[1] The trial court also terminated D.B.'s parental rights, but D.B did not file a notice of appeal.

2

notice of appeal for a restricted appeal must be filed within six months after the trial court signs the judgment. *See* Tex. R. App. P. 26.1(c).

We cannot expand the time for perfecting appeal but for good cause we may suspend a rule's operation and order a different procedure. *See* Tex. R. App. P. 2. In this case, the record has been filed in this appeal and demonstrates that L.R. qualifies for a restricted appeal. *See* Tex. R. App. P. 26.1(c), 30. A timely filed but defective notice of appeal invokes the jurisdiction of the appellate court. *Sweed v. Nye,* 323 S.W.3d 873, 874-75 (Tex. 2010). A termination case should be finally disposed in this Court within 180 days of the date the notice of appeal is filed. *See* Tex. R. Jud. Admin. 6.2(a). Because correcting the technical defects in the notice of appeal would serve no purpose and would further delay the disposition of an appeal that has been pending more than 180 days, we suspend Texas Rule of Appellate Procedure 25.1(d)(7), which requires certain recitals in the notice of appeal, and consider the merits of this restricted appeal.

Sufficiency of the Evidence

This is a default judgment. L.R. does not challenge the validity of service of process; moreover, she consented to the trial court's jurisdiction when she personally appeared at the adversary hearing and the permanency hearing and participated in those proceedings. *See* Tex. R. Civ. P. 120. L.R. does not argue that

3

her failure to appear for the trial was not intentional or the result of conscious indifference but was due to mistake or accident. *See In the Interest of R.R.*, 209 S.W.3d 112, 114-15 (Tex. 2006). A default judgment operates as an admission of the material facts alleged in the plaintiff's petition, but in termination proceedings the judgment must also be supported by clear and convincing evidence. *Williams v. Williams*, 150 S.W.3d 436, 446-47 (Tex. App.—Austin 2004, pet. denied). We will, therefore, review the record for evidentiary sufficiency.

The decision to terminate parental rights must be supported by clear and convincing evidence. *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008). A judgment will be affirmed if a parent committed one or more predicate acts or omissions and termination is in the children's best interest. *See id.* § 161.001 (West Supp. 2013); *see also J.L.*, 163 S.W.3d at 84.

In reviewing the evidence for legal sufficiency, we consider all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *J.L.*, 163 S.W.3d at 84–85. We assume the factfinder

resolved any disputed facts in favor of its finding, if a reasonable factfinder could do so, and "disregard all evidence that a reasonable factfinder could have disbelieved[.]" *Id.* at 85 (quoting *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

When we review a termination of parental rights for factual sufficiency, we give "due consideration" to any evidence that the factfinder could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266; *In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider the disputed evidence and determine whether a reasonable factfinder could not have resolved that evidence in favor of the finding. *J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient if the disputed evidence that does not reasonably support the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction that the fact at issue was true. *Id.*

## Findings

The trial court found that L.R. (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger their physical or emotional well-being, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers their physical or emotional well-being, (3) constructively abandoned the children who had been in the

5

temporary managing conservatorship of the Department for not less than six months, and the Department made reasonable efforts to return the children to the parent, but L.R. has not regularly visited or maintained significant contact with the children, and L.R. demonstrated an inability to provide the children with a safe environment, (4) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children who had been in the temporary managing conservatorship of the Department for not less than nine months as a result of removal for abuse or neglect, and (5) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children, and either failed to complete a court-ordered substance abuse treatment program or continued to use a controlled substance after completion of the program. These findings correspond to grounds D, E, N, O, and P of the predicate grounds enumerated in the statute. *See* Tex. Fam. Code Ann. § 161.001 (1).

L.R. directly challenges only grounds D and E, but her brief includes arguments that relate to the other predicate grounds. We consider each argument that is fairly included in L.R.'s challenge to the sufficiency of the evidence. *See* Tex. R. App. P. 38.1(f).

## Evidence

The trial court heard testimony that L.R. and D.B. were drug trafficking with the children present and that their actions affected the children's well-being. L.R. was driving through Jefferson County in a vehicle that contained marijuana. The children were in the car. L.R. and D.B. were traveling with another vehicle that contained half a kilo of cocaine. The children witnessed their parents' arrests and the older child believed the officers had killed his parents. He was later observed playing "chase" with a toy police car and stating that he had to hide so the police would not get him.

The trial court appointed the Department as the children's temporary managing conservator on June 26, 2012. On July 17, 2012, the Department established a court-ordered service plan for L.R. to obtain return of the children, and L.R. signed the service plan. The Department's investigator testified that L.R. and D.B. were offered services but did not cooperate. L.R. returned to Florida in October 2012. L.R. submitted to a bio-psychosocial evaluation on November 20, 2012, and completed a drug and alcohol assessment on November 28, 2012, but she failed to report her marijuana use.

The trial court ordered L.R. to take and pass drug tests. On June 26, 2012 and September 18, 2012, L.R. tested positive for marijuana in a drug screen.

7

Although she was ordered to submit to a drug screen following the December 11, 2012 hearing, L.R. failed to submit to a screen on that date and refused a drug screen on March 21, 2013.

Drug counseling sessions were scheduled to commence on November 28, 2012. L.R. and D.B. were both dropped from the program due to non-compliance because between November 28, 2012 and March 5, 2013 they attended only six of the twelve recommended substance abuse counseling sessions.

The Department placed the children with a maternal cousin. On December 11, 2012, the trial court ordered L.R. to pay child support in the amount of $50 per month. L.R. failed to pay child support. L.R. last visited the children in November 2012, but failed to confirm the December 21, 2012 visit and failed to make visits that were scheduled for January and February 2013. Although L.R. was not incarcerated, L.R.'s older child believed his mother was in jail and repeatedly asked when she would get out of jail.

The Department's caseworker stated that the children were doing well in their placement with their maternal relatives and that the Department planned to have these relatives adopt the children.

8

Grounds for Termination

In issue two, L.R. contends that the trial court could not form a firm belief that the allegations were true based on evidence that is hearsay. Hearsay evidence that is admitted without objection will not be denied probative value, even under a clear and convincing standard of review. *In the Interest of S.K.A.*, 236 S.W.3d 875, 902 n.26 (Tex. App.—Texarkana 2007), *pet. denied*, 260 S.W.3d 463 (Tex. 2008); *see also* Tex. R. Evid. 802.

L.R. argues that the Department relied on unproven drug use and remote, past bad acts to establish an endangering course of conduct. Endangerment "means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment[]" but "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). L.R. had her children with her while she was transporting a controlled substance and twice tested positive for marijuana before refusing to submit to subsequent drug screening. According to the Department's witnesses, L.R.'s arrest and the separation that resulted when she returned to Florida traumatized the older of the two children.

A parent's drug use and its effect on her ability to parent may qualify as an endangering course of conduct. *In the Interest of J.O.A.*, 283 S.W.3d 336, 346

9

(Tex. 2009). L.R.'s failure to remain drug-free while the children were under the Department's supervision also supports a finding of endangering conduct that exposed the children to the risk that L.R. would be impaired or imprisoned. *In the Interest of J.A.W.*, No. 2–08–215–CV, 2009 WL 579287, at \*4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (mem. op.); *see also Walker v. Tex. Dep't of Family and Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Because L.R. did not appear at the trial, the Department's evidence was not disputed. L.R. appeared and testified at two preliminary hearings, and the trial court took judicial notice of its file during the trial. Referring to testimony from the December 11, 2012 permanency hearing, in her brief on appeal L.R. argues that the Department's caseworker admitted that L.R. completed part of the service plan and visited her children. During the hearing the caseworker stated that the Department's goal was reunification with a concurrent goal of relative conservatorship. She stated that the parents had been cooperative "[o]n and off" and that they had a "slow start" but "recently completed a lot of services." The evidence developed later in the trial showed that L.R. had completed the drug and alcohol assessment and the bio-psychosocial assessment shortly before the permanency hearing; however, she failed to comply with the other service plan

tasks, failed to pay the child support that the trial court ordered at that hearing, failed to complete a drug and alcohol treatment plan, and did not visit the children again.

The caseworker testified that the Department made reasonable efforts to return the children by establishing a service plan and visiting schedule, but L.R. failed to comply with the plan. In her brief on appeal L.R. argues that the Department should have transferred the case to Florida, but the Department's investigator testified that there had been a previous investigation involving drug use with the family and that Florida refused her request to accept custody of the children. The caseworker also testified that Florida denied her request to set up services in Florida after L.R. and D.B. returned to Florida.

From the evidence that supports the findings, the trial court could reasonably have formed a firm conviction or belief that L.R. engaged in conduct that endangered the physical health and emotional well-being of K.R. and K.B., that L.R. failed to comply with the provisions of a court order that specifically established the actions necessary for L.R. to obtain the return of the children, and that L.R. constructively abandoned the children. *See J.L.*, 163 S.W.3d at 84; *see also* Tex. Fam. Code Ann. § 161.001 (1) (E), (N) and (O). The evidence that does not reasonably support the findings is not so significant that the trial court could

not have reasonably formed a firm belief or conviction that L.R. had committed the acts alleged in the Department's petition. *See J.F.C.*, 96 S.W.3d at 266. We overrule issue two. Because we have found the evidence to be legally and factually sufficient to support at least one of the predicate findings, we decline to address issue one, which challenges the trial court's finding that L.R. knowingly placed or allowed the children to remain in conditions or surroundings which endanger their physical or emotional well-being, and includes arguments that the Department failed to meet its burden of proof regarding L.R.'s drug use. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 309, 311–12 (Tex. App.—El Paso 2009, pet. denied); *see also* Tex. Fam. Code Ann. § 161.001 (1) (D), (P).

Best Interest

Regarding the children's best interest, we consider a non-exhaustive list of factors: (1) desires of the children; (2) emotional and physical needs of the children now and in the future; (3) emotional and physical danger to the children now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the children; (6) plans for the children by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9)

12

any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (West 2008).

Although L.R. argues that her children were not abused or neglected by anyone, she placed the children in danger by transporting contraband with them in the car. She claims that she attended parenting and drug assessment classes, but the Department's caseworker testified that L.R. was dropped from the program due to lack of cooperation. L.R. tested positive for marijuana on the occasions when she submitted to drug screenings. The evidence of endangering conduct is probative of the best interest determination. *C.H.*, 89 S.W.3d at 28. The trial court could reasonably have formed a firm belief that L.R. had not modified her behavior so that her children would not be endangered in the future.

L.R. did, as she argues, locate a relative with whom the Department could and did place the children. At the time of the permanency hearing L.R. had recently completed the drug and alcohol assessment and the Department's plan was reunification with conservatorship by the fostering relative, but by the time of trial L.R. had been discharged from the drug and alcohol counseling program due to insufficient attendance. L.R. argues that the Department could have obtained an extension of the temporary conservatorship, but in the trial the caseworker noted

that L.R. and D.B. had not seen the children since November 2012 and had not paid child support.

On the entire record, the trial court could reasonably form a firm belief that termination would be in the children's best interest. *See J.L.*, 163 S.W.3d at 84. The evidence that would support a decision to continue a managing conservatorship by the Department rather than terminating L.R.'s parental rights includes evidence that the children were living with one of L.R.'s relatives, but given the lack of evidence of L.R.'s parenting ability or any indication that she had modified her behavior to avoid exposing the children to the dangers of criminal conduct, the evidence that does not support the finding is not so significant that the trial court could not have reasonably formed a firm belief or conviction that terminating the parent-child relationship is in the children's best interest. *See J.F.C.*, 96 S.W.3d at 266. Because the evidence is legally and factually sufficient to support the trial court's best interest finding, we overrule issue three.

Failure to Appoint Counsel

In issue four, L.R. contends the trial court abused its discretion by failing to appoint counsel for her for the permanency hearing and the termination trial. When the Department seeks termination of the parent-child relationship or appointment of a conservator, the trial court must appoint counsel for an indigent parent who

14

responds in opposition to the termination or appointment. *See* Tex. Fam. Code Ann. § 107.013 (a)(1) (West Supp. 2013). A parent who claims indigence must file an affidavit of indigence before the trial court can conduct a hearing to determine the parent's indigence. *See id*. § 107.013 (d).

L.R. argues that the trial court failed to make the necessary inquiry into her ability to retain counsel. She acknowledges, however, that she did testify about her financial status during the December 11, 2012 permanency hearing. L.R. stated that she and D.B. owned a restaurant that they had opened approximately six weeks earlier. According to L.R., the income from the business was "steady rising." L.R. stated that for the previous week after expenses she cleared $800 and D.B. cleared $500. L.R. also stated that she owned her own home and that she had a deed with her that she could show the court. Because L.R. not only did not claim indigence at the time of the hearing, but affirmatively asserted that she was not indigent, the trial court did not err in failing to conduct a hearing on L.R.'s indigence. *See S.M.M. v. Tex. Dep't of Family and Protective Servs.*, No. 03-12-00585-CV, 2013 WL 812088, at *7-8 (Tex. App.—Austin Feb. 26, 2013, no pet.) (mem. op.).

After the appeal commenced, L.R. submitted an affidavit of indigence in which she stated that she does not receive governmental assistance or public

15

benefits and that she earns $500 per month working at a business that is not the same as the business she was operating ten months earlier. Counsel was appointed for the appeal based on that uncontested affidavit. The trial court did not have this information, which differs from the information L.R. provided to the trial court at the relevant time. Because the record does not support a finding that L.R. was indigent at any time before she filed a post-judgment affidavit of indigence, the trial court did not abuse its discretion by failing to appoint counsel at an earlier time. *In the Interest of G.K.,* No. 09-08-00506-CV, 2009 WL 2616926, at *4 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). The information provided by L.R. showed that she was not indigent at the time of the hearing; therefore, the trial court did not err in failing to appoint counsel for L.R. *Id.* We overrule issue four and affirm the trial court's judgment.

    AFFIRMED.

 

                                      _____

                                          STEVE McKEITHEN
                                          Chief Justice

Submitted on January 21, 2014
Opinion Delivered February 13, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.