COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| M.C., | § | |
|---|---|---|
| Appellant, | § | No. 08-08-00053-CV |
| | § | Appeal from the |
| v. | § | 65th District Court |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 2007CM227) |
| | § | |

## O P I N I O N

M.C. appeals the trial court's final order terminating her parental rights to her child, L.M.C. In three issues, she contends that the evidence supporting termination is legally and factually insufficient, and that Section 263.405 of the Family Code violates the due-process and separation-of-powers clauses. We affirm.

## BACKGROUND

M.C. is the biological mother of L.M.C. The Texas Department of Family and Protective Services ("Department") filed a petition seeking to terminate the parent-child relationship between M.C. and L.M.C. on January 11, 2007. The Department subsequently filed an amended petition, and the trial court set the case for a final hearing. At the conclusion of the hearing, the trial court found that M.C. knowingly placed or knowingly allowed L.M.C. to remain in conditions or surroundings which endangered his physical or emotional well-being, that M.C. engaged in conduct or placed L.M.C. with persons who engaged in conduct which endangered L.M.C.'s physical or emotional well-being, that M.C. constructively abandoned L.M.C., that M.C. failed to comply with the provisions of the court's order that specifically established the actions necessary for M.C. to obtain

the return of L.M.C., and that termination of the parent-child relationship was in the best interest of the child. The trial court entered its termination order on January 15, 2008. M.C. timely filed a statement of points.

## SUFFICIENCY OF THE EVIDENCE

M.C. first contends that the evidence was legally and factually insufficient to terminate her parental rights when despite her mental disabilities, there was no evidence of harm to the child. In reviewing the legal sufficiency of the evidence to support a termination finding, we look at all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction about the truth of the matter on which the Department bears the burden of proof. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002). We assume the fact finder resolved any disputed facts in favor of his finding, if a reasonable fact finder could so do, and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. We do not, however, disregard undisputed evidence that does not support the finding. *Id*.

In reviewing the factual sufficiency of the evidence, we must give "due consideration" to any evidence the fact finder could reasonably have found to be clear and convincing. *Id*., *citing In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We must consider the disputed evidence and determine whether a reasonable fact finder could have resolved that evidence in favor of the finding. *J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

Before parental rights can be involuntarily terminated, the trier of fact must find by clear and convincing evidence that: (1) the parent committed one of the enumerated statutory grounds found

in Section 161.001(1);[1] and (2) termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001 (Vernon 2008); *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.–El Paso 2008, no pet.).  The trial court need only find one of the statutory grounds true, as well as find that the termination was in the child's best interest to terminate parental rights.  *See In re A.D.*, 203 S.W.3d 407, 412-13 (Tex. App.–El Paso 2006, no pet.); *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.–San Antonio 2000, no pet.).  Here, the trial court terminated M.C.'s parental rights under Sections 161.001(1)(D), (E), (N), and (O) of the Family Code.  We will begin our evidentiary sufficiency discussion under Section 161.001(1)(N).

*Section 161.001(1)(N)*

---

[1]  The trial court terminated M.C.'s parental rights under Sections 161.001(1)(D), (E), (N), and (O) of the Family Code.  Therefore, the relevant statutory grounds in this case provide that the parent has:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

.   .   .

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:

(i) the department or authorized agency has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

TEX. FAM. CODE ANN. § 161.001(1).

Subparagraph (N) provides for the termination of the parent-child relationship on grounds of constructive abandonment. TEX. FAM. CODE ANN. § 161.001(1)(N). To prove constructive abandonment, clear and convincing evidence must establish that the child has been in the custody of the Department for at least six months and: (1) the Department made reasonable efforts to return the child to the parent; (2) the parent has not regularly visited or maintained significant contact with the child; and (3) the parent has demonstrated an inability to provide the child with a safe environment. *See* TEX. FAM. CODE ANN. § 161.001(1)(N). Here, the Department was appointed as L.M.C.'s temporary managing conservator on January 11, 2007, and was in State care until the final hearing in December 2007. Thus, L.M.C. was in State care for a period longer than six months.

Moreover, the Department made reasonable efforts to return L.M.C. to M.C. A family service plan was prepared, and Teresa Salazar, the initial caseworker, went over the plan with M.C., explaining the Department's expectations. The plan provided opportunities for M.C. to partake in a number of services to restore her parental rights, including counseling services and parenting classes. The plan also provided for visitations between M.C. and L.M.C. The preparation and administration of the service plan shows that the Department made reasonable efforts to reunite M.C. with her child. *See In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.–Fort Worth 2002, no pet.) (preparation and administration of service plans by the Department are reasonable efforts to reunite a parent and a child).

However, M.C. did not regularly visit and maintain significant contact with L.M.C. According to the service plan, M.C. was to visit L.M.C. twice a week in two-hour intervals. Connie Gutierrez, L.M.C.'s foster parent, claimed M.C. only visited L.M.C. between six and eight times in a twelve-month period, and only informed her on two occasions that she would miss visitation. M.C. blamed her lack of visitation on back pain, taking neighbors to the doctor or drug store, and lack of transportation. On one occasion, when M.C. called thirty minutes before the visit, stating that she lacked transportation, the caseworker advised her to call earlier so that the Department could send someone to get her. After that, M.C. called the Department after the scheduled visits to say she could not be there. From January 2007 through April 2007, M.C. missed so many scheduled visitations that the Department advised the foster parents not to bring L.M.C. to visitation unless M.C. appeared first. When L.M.C. had surgery for his cleft lip and was hospitalized for five days, M.C. never visited him. And when M.C. attended visitations, she remained quiet and showed no emotion. Based on these facts, it is clear that M.C. did not regularly visit or maintain significant contact with L.M.C. *See In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.–San Antonio 2002, no pet.); *In re P.R.*, 994 S.W.2d 411, 416 (Tex. App.–Fort Worth 1999, pet. dism'd w.o.j.) (cases noting a parent fails to regularly visit or maintain significant contact with the child if the parent fails to take advantage of the visitation rights or if the visits are intermittent or sporadic).

Finally, M.C. demonstrated an inability to provide the child with a safe environment. When L.M.C. was born, M.C.'s intentions were to place him for adoption since she did not have the means to take care of him – she was unemployed and living with a friend. While L.M.C. remained hospitalized for a week after his birth due to a cleft lip and pallet, M.C. made no attempts to gather basic necessities for him such as a crib, food, or clothes. After his birth, M.C. stayed with friends, moved without informing the Department, and had no permanent housing. She also lacked

transportation and employment. M.C. told her caseworkers that she was diagnosed with bipolar disorder and depression, and that she had anger-management issues. M.C. did not attend all of her therapy sessions and parenting classes as requested by the Department and failed to seek treatment from MHMR. M.C.'s parenting teacher testified that although M.C. was smart and indicated a willingness to change, she lacked the ability to follow-through with actions. Further, because of L.M.C.'s cleft lip and pallet, L.M.C. requires a special bottle and constant attention, and needs additional surgery. He also has breathing difficulties that require him to take medication by a nebulizer twice a day, and is allergic to most soaps and detergents. Given M.C.'s habits and lack of stability, there is serious question as to whether she could attend to her son's health. Therefore, after reviewing all the evidence in the record, we find that M.C. demonstrated an inability to provide the child with a safe environment. *See In re J.J.O.*, 131 S.W.3d 618, 630 (Tex. App.–Fort Worth 2004, no pet.) (attending only half of her parenting classes, lacking steady housing and employment, and missing the opportunity for counseling and a psychological evaluation demonstrated inability to provide child with safe environment); *In re M.D.L.E.*, No. 09-05-0514-CV, 2007 WL 685562, at *8 (Tex. App.–Beaumont Mar. 8, 2007, no pet.) (mem. op.) (mental-health issues and lack of steady employment and housing demonstrated inability to provide child with safe environment).

In light of the aforementioned evidence, we hold that the record contains sufficient evidence to support the trial court's finding that M.C. constructively abandoned her child. *See* TEX. FAM. CODE ANN. § 161.001(1)(N); *H.R.*, 87 S.W.3d at 699 (holding evidence sufficient to support finding that mother constructively abandoned child where mother failed to fulfill requirements of court-ordered service plan to regain custody of child and rarely visited child); *P.R.*, 994 S.W.2d at 416 (holding evidence sufficient to support finding of constructive abandonment where mother visited the children only sporadically, had an unstable employment history, and no permanent residency),

*disapproved on other grounds by J.F.C.*, 96 S.W.3d at 267. Because we find there was both legally and factually sufficient evidence to support the trial court's finding under Section 161.001(1)(N), we need not address the other findings of statutory acts or omission or commission under subparagraphs (D), (E), or (O). *A.D.*, 203 S.W.3d at 412; *S.F.*, 32 S.W.3d at 320. We now turn to whether there was sufficient evidence to support termination in the best interest of the child.

*Best Interest of the Child*

A statutory act of omission or commission must be coupled with a finding that termination of the parent-child relationship is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2); *A.B.*, 269 S.W.3d at 127. In reviewing the sufficiency of the evidence to support the second prong, we apply the non-exclusive factors found in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the plans for the child by these individuals; (6) the stability of the home; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

The *Holley* factors, however, are not exhaustive, and no single consideration is controlling. *A.B.*, 269 S.W.3d at 126. Nor is a fact finder required to consider all of them. *Holley,* 544 S.W.2d at 372. Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of a child. *C.H.*, 89 S.W.3d at 27. But on the other hand, the presence of scant evidence relevant to each *Holley* factor will not support a finding. *Id.*; *A.B.*, 269 S.W.3d at 126.

The evidence submitted showed that M.C.'s parent-child relationship with her first two children was terminated based on a perceived danger to her children. At that time, M.C. was

uncooperative with the Department and very resistant. And when the Department discussed the placement of her children and asked M.C. to sign a safety plan and seek psychiatric services, M.C. became violent, flipping over a table and tossing a chair in the caseworker's direction. Although the Department recommended that M.C. attend anger management counseling, and although M.C. began her counseling sessions, it was not known whether she completed the program. M.C. refused to seek the services at MHMR.

M.C. was unemployed at the time of L.M.C.'s birth and lacked a stable residence. Because L.M.C. was born with a cleft lip and pallet, he remained hospitalized for a week. During that time, M.C. made no attempt to gather basic necessities for L.M.C. like a crib, food, or clothes. Nevertheless, the Department prepared a family service plan and discussed the plan with M.C., explaining the Department's expectations if M.C. hoped to be reunited with L.M.C. The service plan required M.C. to participate in individual therapy, contact her caseworker on a weekly basis, participate in a psychological evaluation, refrain from any type of abuse towards children and learn appropriate ways of parenting, participate in parenting classes, obtain and maintain appropriate housing and employment, participate in supervised visitation, and discuss in therapy the problems that required the Department's intervention. M.C. indicated her understanding of the plan.

But M.C. only attended three therapy sessions, and the counselor "never heard from her again." And M.C. failed to show for two of her eight scheduled parenting classes. M.C. did not attend mediation, nor did she stay in contact with her caseworker on a weekly basis. M.C. also moved without informing the Department. Further, M.C. did not regularly visit or maintain significant contact with L.M.C. She had no steady employment. And despite being informed of her lack of compliance with the family plan and the willingness of the Department to help her with visitation and other services, M.C.'s habits did not change.

M.C. was bipolar, depressed, and lacked anger-management. Although M.C. excuses her conduct based on her mental disability and places the blame for her failure to seek treatment for her mental disability on the Department, nothing stopped M.C. from going to MHMR and attending her therapy sessions as requested by the Department, especially when the Department offered her the means to do so.

With regard to L.M.C., the evidence showed that he was born with a cleft lip and pallet. L.M.C. underwent surgery to correct his cleft lip, and although the foster parents were present at the first surgery, M.C. failed to show. L.M.C. also requires a special bottle and constant attention, needs additional surgery, has breathing difficulties that require him to take medication by a nebulizer twice a day, and is allergic to most soaps and detergents. L.M.C.'s foster parents, with whom he bonded with, are able to meet his medical needs. The Department's plan for L.M.C. was for adoption by the foster parents. Leigh Lewis, the guardian ad litem, testified as to her belief that adoption by the foster parents would provide L.M.C. with a safe and permanent home and that the proposed adoption was in L.M.C.'s best interest.

In reviewing the evidence, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination was in the best interest of the child. M.C. did not participate in the services offered, showed violent behavior in the past, made lackluster efforts to visit L.M.C., showed no emotions when she attended to L.M.C., did not stay in contact with the Department, and did not maintain suitable housing or employment. L.M.C. bonded with his foster parents, and unlike M.C., they are capable of meeting his medical needs. Therefore, we find the evidence is both legally and factually sufficient to support a finding that termination was in L.M.C.'s best interest. *See A.B.*, 269 S.W.3d at 129 (finding evidence sufficient to support termination in best interest of child when child bonded with foster family and mother refused to participate in services

offered, did not stay in contact with the Department, moved frequently, refused access to her home by the caseworker, cursed at the caseworker, and had not seen her child since the Department took custody); *In re M.R.*, 243 S.W.3d 807, 820-22 (Tex. App.–Fort Worth 2007, no pet.) (finding evidence sufficient to support termination in best interest of children when children bonded and flourished with foster family, and mother did not complete aspects of her service plan, failed to obtain housing or employment, made no efforts to change her behavior, had her parental rights terminated with her other children, and children were exposed to domestic violence).

Having determined that the evidence was legally and factually sufficient to terminate M.C.'s parental rights, we overrule Issue One.

## CONSTITUTIONALITY OF SECTION 263.405

M.C. next contends that Sections 263.405(b) and (i) of the Family Code violate the due-process clause and separation-of-powers clause. Those statutes provide as follows:

(b) Not later than the 15th day after the date a final order is signed by the trial judge, a party who intends to request a new trial or appeal the order must file with the trial court:

(1) a request for a new trial; or

(2) if an appeal is sought, a statement of the point or points on which the party intends to appeal.

.   .   .

(i) The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial.

TEX. FAM. CODE ANN. § 263.405(b), (i) (Vernon 2008). We address M.C.'s due-process challenge first.

*Due Process*

In contending that Sections 263.405(b) and (i) violate the due-process clause, M.C. alleges that those sections are unconstitutional on their face and as applied because the expedited timetable deprives her appellate counsel of meaningful review of the trial record. We turn to M.C.'s facial unconstitutional challenge first.

When addressing constitutional challenges, we begin with the premise that a statute, when possible, must be interpreted in a manner that renders it constitutional. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000); *In re S.N.*, 287 S.W.3d 183, 193-94 (Tex. App.– Houston [14th Dist.] 2009, no pet.). Facial challenges are the most difficult challenges to mount because "the challenger must establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). In other words, a party raising a facial challenge must demonstrate that the statute always operates unconstitutionally. *Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 814 n.94 (Tex. 2005); *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex. 1999). In reviewing a facial challenge, we consider the statute as written, rather than as it operates in practice. *FM Props.*, 22 S.W.3d at 873.

M.C. contends that appellate counsel, who is often different from trial counsel, may not have the time within fifteen days to closely review the trial record to determine whether there are arguable points to present for review. *See In re E.A.R*, 201 S.W.3d 813, 817 (Tex. App.–Waco 2006, no pet.) (Vance, J., concurring). However, just because a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . ." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Instead, a party seeking to invalidate a statute must establish that every application of the statute violates the constitution. *See Nootsie, Ltd. v. Williamson Co. Appraisal Dist.*, 925 S.W.2d 659, 663 (Tex. 1996). Although appellate counsel may have little to no background on what occurred at trial other than

information obtained from trial counsel or the client, we cannot agree that these circumstances automatically result in depriving parents whose parental rights have been terminated of their due-process rights. In this case, appellate counsel was promptly appointed and timely filed a statement of points listing numerous grounds for appeal. Further, appellate counsel obtained and reviewed a transcript of the proceedings before he filed his statement of points. M.C. has not contended there are any issues appellate counsel was precluded from raising because of the statutory time restrictions.

Moreover, consider, for example, when appellate counsel is the same as trial counsel. In that situation counsel would be able to timely file a statement of points within 15 days as he would have been aware of all objections at trial that could be raised on appeal. Further, in cases where the record may be needed to file a statement of points, the Texas Supreme Court recently held that under Texas Rules of Civil Procedure 5, a trial court may grant a party's motion to extend time for filing a statement of points for appeal under Section 263.405 when good cause is shown. *See In re M.N.*, 262 S.W.3d 799, 804 (Tex. 2008); TEX. R. CIV. P. 5. Therefore, we conclude that M.C. has not established that Sections 263.405(b) and (i), by their terms, always has and always will operate unconstitutionally. *See In re N.C.M.*, 271 S.W.3d 327, 329 (Tex. App.–San Antonio 2008, no pet.); *In re S.N.*, No. 11-08-00293-CV, — S.W.3d —, 2009 WL 2209863, at *3 (Tex. App.–Eastland Jul. 23, 2009, no pet.) (not yet reported) (cases rejecting facial-unconstitutionality argument to Section 263.405). Consequently, we reject M.C.'s argument that Sections 263.405(b) and (i) are facially unconstitutional.

A claim that a statute is unconstitutional as applied is a claim that the statute, although generally constitutional, operates unconstitutionally as to the claimant because of her particular circumstances. *Texas Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 461 n.5 (Tex. 1997). In an as-applied challenge, the challenger is only required to demonstrate the statute operates

unconstitutionally when applied to her particular circumstances. *In re N.C.M.*, 271 S.W.3d at 328-29.

In this case, M.C. has not identified any appellate issues she was prevented from pursuing because of the restrictions in Section 263.405. Nor has she alleged she would have discovered more issues if more time had been allowed. We recognize that our sister courts have found Section 263.405 unconstitutional as applied in cases where appellate counsel was not appointed until after the statement of points was due, and the Supreme Court recently held Section 263.405 unconstitutional to the extent it prevents a challenger from raising ineffective or evidentiary sufficiency claims on appeal if those contentions were not first alleged in a statement of points. *See In re J.O.A.*, 262 S.W.3d 7, 24 (Tex. App.–Amarillo 2008), *rev'd on other grounds*, 283 S.W.3d 336 (Tex. 2009); *In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.–Texarkana 2007, pet. denied); *In re D.M.*, 244 S.W.3d 397, 415 (Tex. App.–Waco 2007, no pet.) (cases holding Section 263.405 unconstitutional as applied when appellant was not appointed counsel until after statement of points was due); *see also In re J.O.A.*, 283 S.W.3d 336, 339 (Tex. 2009) (concluding that Section 263.405(i) is unconstitutional to the extent it prevents claimants from raising ineffective assistance of counsel and insufficiency of the evidence when those claims are not first raised in a statement of points). But those factual scenarios are not before us. Because M.C. has not alleged there were other complaints she would have raised but for the restrictions of Sections 263.405(b) and (i), she has not demonstrated the statute operated to deprive her of any due-process rights. *In re V.G.*, No. 04-08-00522-CV, 2009 WL 2767040, at *15 (Tex. App.–San Antonio Aug. 31, 2009, no pet.) (mem. op.); *In re T.D.M.*, No. 12-07-00458-CV, 2008 WL 2122601, at *2 (Tex. App. –Tyler May 21, 2008, no pet.) (mem. op.); *In re J.J.*, No. 2-06-333-CV, 2008 WL 623633, at *1 (Tex. App.–Fort Worth Mar. 6, 2008) (mem. op.), *pet. denied*, 260 S.W.3d 461 (Tex. 2008) (cases rejecting as-applied challenge

when appellant did not identify how she was harmed by application of Section 263.405).

Having determined that M.C. failed to demonstrate Sections 263.405(b) and (i) are facially unconstitutional or unconstitutional as applied to her circumstances, we overrule her second issue.

*Separation of Powers*

M.C.'s third issue asks us to hold Section 263.405 unconstitutional as a violation of the separation-of-powers clause, in conjunction with our sister court's decision in *In re D.W.*, 249 S.W.3d 625 (Tex. App.–Fort Worth), *pet. denied*, 260 S.W.3d 462 (Tex. 2008). In *D.W.*, the court was concerned with the constitutionality of Section 263.405(i) when that statute prohibited the court from addressing the trial court's denial of appellant's motion to extend the dismissal deadline under Section 263.401.[2] *Id*. at 632. Determining that appellant properly preserved her objection under Section 263.401 at trial but that she failed to include that issue in her statement of points, the court found that the legislature, by enacting Section 263.405(i), violated the doctrine of separation of powers by encroaching on the judiciary's substantive power to review issues preserved at trial but not included in a statement of points. *Id*. at 632, 640.

We need not reach the constitutionality of Section 263.405 under the separation-of-power clause as M.C. wholly failed to show how Section 263.405(i) operated to deprive her of the ability to raise certain challenges on appeal. *See VanDevender v. Woods*, 222 S.W.3d 430, 432 (Tex. 2007) (noting that courts should rest decisions on non-constitutional grounds, if available, and not "wade into ancillary constitutional questions"); *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional

---

[2] Section 263.401 pertains to the dismissal of a suit affecting the parent-child relationship filed by the Department. TEX. FAM. CODE ANN. § 263.401 (Vernon 2008). That statute requires the trial court to dismiss a suit filed by the Department if the suit has been pending for one year and the court has not rendered a final order or granted an extension. *Id*. at § 263.401(a), (b).

grounds."); *see also* TEX. R. APP. P. 44.1(a) (defining harmful error in civil cases as error that probably resulted in an improper judgment or that "probably prevented the appellant from properly presenting the case to the court of appeals"). Nowhere in M.C.'s brief does she identify any issues that we have not already addressed which were preserved in the court below but not raised herein because those issues were not included in her statement of points. *See, e.g., Walker v. Texas Dept. of Family and Protective Services*, No. 01-07-00867-CV, — S.W.3d —, 2009 WL 1688469, at *7, 12 (Tex. App.–Houston [1st Dist.] June 18, 2009, no pet.) (not yet reported) (refusing to reach the constitutionality of Section 263.405 under the due-process clause and separation-of-powers clause absent a showing that the operation of the challenged statute caused appellant harm); *In re M.M.F.*, No. 2-08-014-CV, 2008 WL 5265033, at *7 (Tex. App.–Fort Worth Dec. 18, 2008, no pet.) (mem. op.) (refusing to address constitutionality of Section 263.405 under the separation-of-powers clause when harm complained-of – that he did not timely file a statement of points – was moot since the trial court granted an extension to file a statement of points and appellant later filed his statement of points); *In re H.B.*, No. 2-06-102-CV, 2006 WL 3438193, at *2 (Tex. App.–Fort Worth Nov. 30, 2006, no pet.) (mem. op. on reh'g) (refusing to address appellant's argument on separation-of-powers principle when trial court granted the requested relief and appellant failed to demonstrate harm). As such, any opinion rendered by this Court on the constitutionality of Section 263.405 under the separation-of-powers clause would address only a hypothetical injury and therefore be advisory. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (opinion issued in case not ripe for review is advisory because rather than remedying an actual or imminent harm, it addresses only a hypothetical injury); *Valero Refining-Tex. L.P. v. State*, 203 S.W.3d 556, 563 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (rejecting constitutional challenge based on hypothetical injury and noting appellant did not bring forth sufficient record to show the facts surrounding his

conduct to support a constitutional violation). This we cannot do. *Texas Air Control Bd.*, 852 S.W.2d at 444 (appellate courts have no jurisdiction to render advisory opinions). Because M.C. has not shown how the statute operated in such a way to cause her harm, we overrule her third issue. *See* TEX. R. APP. P. 44.1(a); *In re K.D.*, 202 S.W.3d 860, 866 (Tex. App.–Fort Worth 2006, no pet.) (refusing to address constitutionality of Section 263.405 when appellant suffered no harm under Rule 44.1(a) since appellate court was able to review merits of appellant's purported issues); *Lott v. Bexar County Sheriff's Dep't*, No. 04-97-00088-CV, 1998 WL 635284, at *3 (Tex. App.–San Antonio Sept. 16, 1998, no pet.) (refusing to reach the constitutionality of certain civil service commission rule when appellant was not harmed under Texas Rule of Appellate Procedure 44.1(a)).

## CONCLUSION

Having overruled M.C.'s three issues, the trial court's judgment terminating her parental rights is affirmed.

GUADALUPE RIVERA, Justice

October 28, 2009

Before Chew, C.J., McClure, and Rivera, JJ.