

NUMBER 13-17-00320-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

In the Interest of D.R.M., J.Y.M., D.M.M., and D.N.M., minor children

On appeal from the 430th District Court of
Hidalgo County, Texas.

# MEMORANDUM OPINION

Before Justices Rodriguez, Benavides and Longoria
Memorandum Opinion by Justice Longoria

Appellant J.M. ("Father") appeals the trial court's order terminating his parental rights to D.R.M., J.Y.M., D.M.M., and D.N.M.[1]  On appeal, Father argues that:  (1) the termination proceedings violated the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, *see* U.S. CONST. amend. IV, V, XIV; (2) the evidence was legally and factually insufficient to support termination based on an act or omission under § 161.001(b)(1), *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(A), (C), (N), (O) (West, Westlaw

---

[1] To protect the identity of the children, we refer to the children, appellant, and other persons involved by their initials.  *See* TEX. R. APP. P. 9.8(b).

through 2017 1st C.S.).; and (3) the evidence was legally and factually insufficient to establish that termination was in the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We affirm.

## I. BACKGROUND

Adan Guzman, the Departments' primary caseworker throughout this case, testified on behalf of the Department concerning the underlying, and undisputed, facts. D.R.M., J.Y.M., D.M.M., and D.N.M. are the children of Father and S.M. (Mother).[2] In May of 2013, D.R.M. and J.Y.M. were removed from Father and Mother's care due to medical neglect. At the time of removal, D.R.M. had a radius fracture, and J.Y.M. was underweight, had four back left rib fractures, a bruised liver, and a broken wrist. Father and Mother did not offer any explanations for the children's injuries. J.Y.M. was sent to Corpus Christi to receive Early Childhood Intervention Services, and D.R.M. was treated by child abuse specialists for "neglect and physical abuse." Investigations also revealed that Mother had a problem with cocaine use and a history of burglary.

In August 2014, the trial court awarded permanent managing conservatorship over D.R.M. and J.Y.M. to the children's paternal grandmother (Grandmother). Father and Mother retained visitation rights. In February of 2015, the Department of Family and Protective Services (the Department) filed its original petition to terminate Mother's and Father's parental rights in regard to D.R.M. and J.Y.M. Just one month later, D.M.M. and D.N.M., twins, were born prematurely to Father and Mother. In April of 2015, the Department filed a petition to terminate Father's and Mother's parental rights with respect to the twins, and in July of 2015, the two termination cases were consolidated. Guzman testified that the twins remained in the neonatal intensive care unit (NICU) because they

---

[2] Mother is not a party to this appeal.

were born prematurely. However, he also related that Mother left the hospital after she was discharged without ever visiting the twins even though Mother claims she attempted to visit the twins. Likewise, Father did not visit the twins in the NICU. The Department filed a temporary order to have the twins removed from Father and Mother's custody and relocated to San Antonio. Guzman testified that even though Father was offered assistance and transportation to visit the twins more frequently, Father only visited his children a few times over the next several years.

In January of 2016, Grandmother surrendered the two older children to the Child Protective Services (CPS) office in Edinburg because she claimed that she was unable to continue caring for the children due to her health. In April of 2016, an order terminating Father's parental rights to all four of his children was entered by an associate judge based on subsections 161.001(b)(1)(A), (C), (N), and (O). Father requested a de novo hearing from the associate judge's order, which the trial court denied. This Court reversed that decision and remanded to the trial court for a de novo trial. *In re A.A.T., D.R.M., J.Y.M., D.M.M., and D.N.M.*, No. 13-16-00269-CV, 2016 WL 8188946 (Tex. App.—Corpus Christi Aug. 25, 2016, no pet.) (mem. op.). The de novo trial occurred on June 12, 2017. The trial court terminated Father's parental rights as to all four children. This appeal ensued.

## II. CONSTITUTIONAL CHALLENGE

In his first issue, Father argues that his Constitutional rights were violated. He asserts that Guzman deliberately misled the trial court and gave a false impression of the case by omitting certain important details, even though Father concedes that "[Guzman] mainly testified truthfully." More specifically, he argues that: (1) conflicting evidence was presented at trial; (2) the Department's petition was overly broad and thus did not give Father adequate notice of what the grounds for termination were, in violation of the Fifth

and Fourteenth Amendments; and (3) the removal of the twins was an unlawful seizure under the Fourth Amendment. U.S. CONST. amend. IV, V, XIV.

Generally, a party must make a timely objection to the trial court in order to preserve error for appeal. *In re B.L.D. & B.R.D.*, 113 S.W.3d 340, 350 (Tex. 2003). This is true for parental termination cases as well as constitutional challenges. *See id.*; *Brewer v. Simental*, 268 S.W.3d 763, 767 (Tex. App.—Waco 2008, pet. denied).

Although Father raises several constitutional issues on appeal, the record reveals that he failed to present any of these objections to the trial court below. Accordingly, the trial court had no opportunity to correct any potential errors before rendering its verdict. *In re B.W.*, 99 S.W.3d 757, 760 (Tex. App.—Houston [1st Dist.] 2003). Father has failed to preserve his constitutional challenges for appellate review. *In re B.L.D.*, 113 S.W.3d at 350. Additionally, Father continually refers to the record of the first trial to support his constitutional challenges on appeal. However, the transcript from the previous termination trial was not introduced as evidence at the de novo trial. Since the transcript of the first trial was not introduced during the de novo trial, evidence from the first trial could not be considered by the trial court in the de novo trial. *Green v. Kaposta*, 152 S.W.3d 839, 841 (Tex. App.—Dallas 2005, no pet.).

However, even assuming that Father preserved his constitutional challenges, we find that they hold little merit. For example, Father argues that the pleadings were so broad as to deprive him of due process because they did not give him adequate notice of what he was being accused of. However, all of the Department's petitions and subsequent amended petitions alleged the very grounds upon which his parental rights were ultimately terminated. Furthermore, Father's parental rights were terminated pursuant to 161.001(b)(1), subsections (N) and (O) in the first trial in 2016. So it is difficult

4

to argue that Father did not know that the Department would proceed to argue the same grounds in the 2017 de novo trial.  Lastly, concerning the alleged unconstitutional removal of his children, specifically the twins, the trial court entered a temporary order with respect to D.R.M. and J.Y.M. in May of 2015 and another temporary order concerning the twins D.M.M. and D.N.M. in July of 2015.  "A trial court's decision to allow the Department to maintain custody of a child following an adversary hearing is reviewable, if at all, through a petition for writ of mandamus." *In Interest of J.D.S.*, 494 S.W.3d 387, 389 (Tex. App.—Waco 2015, no pet.).  Father did not challenge the initial removal of the children in the trial court and he did not file a writ of mandamus.  Also, the children's initial removal has been superseded by the entry of a final order of termination.  *See id.*  Therefore, we overrule Father's first issue.

### III.  TERMINATION UNDER SECTION 161.001(b)(1)

In issues two, three, four, and five, Father claims that the evidence was legally and factually insufficient to support the trial court's finding that Father committed any of the respective statutory grounds for termination alleged by the Department.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A), (C), (N), (O).

#### A.  Standard of Review

Parental rights may be terminated only upon proof of clear and convincing evidence that the parent has committed an act prohibited by section 161.001(b)(1) of the Texas Family Code, and that termination is in the best interest of the child." *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied).  Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2017 1st C.S.).

5

When the legal sufficiency of the evidence is challenged in a parental termination case, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Accordingly, we assume the finder of fact resolved all disputed facts in favor of its finding, if a reasonable factfinder could do so; likewise, we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* When the factual sufficiency is challenged in a parental termination case, we also consider the conflicting evidence. *Id.* If the disputed evidence is so "significant" that it would prevent a reasonable factfinder from forming a firm belief of the findings, then the evidence is factually insufficient. *Id.*

## B. 161.001(b)(1)(N)

We address Father's fourth issue—challenges to the sufficiency of the evidence supporting a finding under 161.001(b)(1)(N)—first because it is dispositive. *See* TEX. R. APP. P. 47.1.

### 1. Applicable Law

Subsection N provides that:

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:

(i) the Department or authorized agency has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment.

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N). "Reasonable efforts" to reunite the parent

6

and a child can be satisfied through the preparation and administration of a service plan. *In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.). Performing evaluations of family members' homes for possible placement for children also supports a finding of reasonable efforts to return a child to an incarcerated parent. *See id.*

Constructive abandonment may be supported by proof that a parent infrequently visited a child while in the Department's custody. *In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.). And in considering whether a parent has demonstrated the ability to provide the children with a safe environment, a factfinder may consider the parent's participation in services, lack of stable housing, missed opportunities for counseling and psychological evaluations, and past substance abuse. *M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 309 (Tex. App.—El Paso 2009, pet. denied).

### 2. Analysis

We agree with the Department that the record contains legally and factually sufficient evidence to support termination under subsection N. The record establishes that the Department created and filed a service plan for Father. The plan required him to: (1) participate and complete substance abuse assessment and any recommended treatment; (2) participate in random drug tests at least once a month; (3) participate in parent/child visits twice a week for two hours; (4) pay child and medical support in the amount of five dollars per month; (5) participate in individual counseling leading to family counseling; (6) attend parenting classes; and (7) complete a psychological evaluation. Guzman testified that Father did complete at least two drug screenings.

In one of the tests, he tested negative, and in the other he tested positive for cocaine. Guzman further testified that Father failed to submit to a drug and alcohol abuse

assessment, did not participate in a psychological assessment, did not attend any parenting classes, and did not go to any individual or family counseling. Father argues in response that for a large portion of the case below, he was incarcerated, which hindered his ability to follow the service plan. Additionally, when he was not incarcerated, he alleges that he had no mode of transportation, was frequently homeless, and had difficulty walking on his feet. However, Guzman testified that Father was offered assistance and transportation to complete all of his court-ordered services but did not make use of such assistance. Also, according to Guzman, even though Father was incarcerated for extended periods of time, services and transportation were available to him when he was released, and yet Father still did not participate in any services. Guzman also claimed that he attempted to maintain monthly contact with Father by telephone. And, as we discuss below, Guzman performed a home study for Father's father (Grandfather) for possible placement of the children. Ultimately, placement was not recommended based on insufficient income and inadequate sleeping arrangements. Thus, based on the Department's preparation of a service plan and performance of a house evaluation, the record supports the trial court's determination that the Department made reasonable efforts to reunite Father with his children. *See In re N.R.T.*, 338 S.W.3d at 674.

Evidence at the trial indicated Father has not seen his children more than a few times since the Department became involved. Guzman testified that Father made little to no effort to regain custody of his children after Grandmother was named managing conservator. Father claims that he and Mother attempted to visit the twins while they were in the NICU but were turned away because Mother was sick. However, on cross-examination, the attorney ad litem responded, "No, I don't recall that. The medical staff just told me that [Mother] had not been there for the children." After the twins were

8

transported from the NICU to San Antonio in July of 2015, Father did not make any contact with the twins. The attorney ad litem testified that over the two years since their birth, Father has only had a few hours of contact with the twins. Guzman testified that despite being offered help and transportation, Father put forth little effort to visit any of his children. Father did not challenge the original removal of his children and he did not appear at the emergency hearing when Grandmother returned the children to the CPS. The record supports the trial court's determination that Father constructively abandoned his children while they were in the Department's custody and that he failed to visit or maintain significant contact with his children. *See In re H.R.*, 87 S.W.3d at 699.

Guzman and the attorney ad litem both testified that Father was unable to provide a safe and stable place for the children to reside. Father concedes that he was homeless and frequently slept in public parks; however, Father argues that he offered his Grandfather as a possible residence for the children. A home study was performed sometime in 2016, and placement with Grandfather was not recommended due to insufficient income and inadequate sleeping arrangements: Grandfather lived in a three-bedroom apartment with his wife and five children. Grandfather confirmed that he was notified mid-2016 that he was not approved for placement, but Grandfather did not contact Guzman to discuss the results until 2017. When asked if Grandfather would contact law enforcement if Father ever attempted to violate a court order, he stated that he would not. Furthermore, in determining whether Father had provided the children with a safe environment, the trial court could consider Father's lack of participation in services, his lack of stable housing, and Father's missed opportunities for counseling. *See M.C.*, 300 S.W.3d at 309. Therefore, we find that the record supports the trial court's finding that Father was unable to provide the children with a safe environment. *See id.*

9

Based on the above evidence, we conclude that the evidence is legally and factually sufficient to support termination under 161.001(b)(1)(N). *See In re J.O.A.*, 283 S.W.3d at 344.

## C. Subsections 161.001(b)(1)(A), (C), (O)

Having found that the evidence was legally and factually sufficient under subsection (N), we need not address the sufficiency of the evidence under subsections (A), (C), or (O) because the Department only needs to prove one statutory act or omission under 161.001(b)(1). *See In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *see also* TEX. R. APP. P. 47.1. Therefore, we overrule Father's second, third, and fifth issues.

## IV. BEST INTERESTS OF THE CHILDREN

In his sixth issue, Father argues that the evidence was legally and factually insufficient to support the finding that termination was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## A. Standard of Review

In reviewing a best interest finding, we consider the non-exclusive *Holley* factors. *See In re E.N.C.*, 384 S.W.3d at 807 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). These factors include: (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) any emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

10

## B. Analysis

### 1. The Desires of the Child

In determining the children's desires, the factfinder can consider evidence that the children spent minimal time in the presence of the parent and that no emotional bond exists between the children and the parent. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Guzman and the attorney ad litem for the children testified that Father has had minimal contact with the children throughout their lives. When Grandmother returned the two older children to CPS, Father did not appear at the removal hearing. When the twins were born, Father did not appear at the hospital and he only visited the children twice after that in San Antonio, despite being informed that transportation was available for him to visit his children more often. By the time of the trial, the children did not mention Father. This factor weighs in favor of termination. *See id.*

### 2. The Present and Future Emotional and Physical Needs of the Children; the Emotional and Physical Danger to the Children Now and in the Future

A factfinder may infer that a parent's past inability to meet a child's physical and emotional needs at the time the child was in the parent's custody may indicate the parent's future inability to meet the child's physical and emotional needs if the child is returned to the parent. *D.O. v. Tex. Dep't of Human Servs.*, 851 S.W.2d 351, 356 (Tex. App.—Austin 1993, no writ). Also, "permanence is a paramount consideration for the child's present and future physical and emotional needs." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Thus, a parent's inability to provide a stable home, remain gainfully employed, or comply with a court-ordered service plan supports a finding that termination is in the child's best interest. *In re D.C.*, 128 S.W.3d 707, 717 (Tex. App.—Fort Worth 2004, not pet.).

The record indicates that D.R.M. and J.Y.M. were first removed due to medical neglect. D.R.M. had a radius fracture and J.Y.M. had four fractured ribs, with no consistent explanations as to what caused these injuries. When they resided with Grandmother, Father provided no support and rarely visited the children. Father admitted to being homeless and being unable to provide stable housing for the children. The record reflects that Father did not comply with the court-ordered service plan, and Father does not deny it. Guzman testified that Father had no empathy for the children and that he lacked any serious attachment to them. In sum, the record established that Father exposes his children to emotional and physical danger and that he cannot provide for their emotional and physical needs now and in the future. *See id.* The second and third *Holley* factors weigh in favor of termination.

### 3. Parental Abilities of the Individuals Seeking Custody

The fact that a parent has poor parenting skills and "was not motivated to learn how to improve those skills" is evidence supporting a finding that termination is in the child's best interest. *Wilson v. State*, 116 S.W.3d 923, 925 (Tex. App.—Dallas 2003, no pet.). Thus, based on Father's lack of contact with the children, repeated homelessness, failure to complete services, continued criminal activity and incarceration, and failure to attend any counseling classes, the trial court could have concluded that the Father has poor parenting skills and is not motivated to learn how to improve those skills. *See id.* The fourth *Holley* factor weighs in favor of termination.

### 4. Programs Available to Assist the Individuals Seeking Custody to Promote the Best Interest of the Child

The record established that parenting classes and counseling were made available to Father. Despite being offered transportation, Father did not attend any classes or counseling. The fifth *Holley* factor favors termination.

12

### 5. Plans for the Child of the Individuals or the Agency Seeking Custody; Stability of the Home or Proposed Placement

Father offered no insight to his plans for the children. He did not state an intent to change his behavior significantly. Guzman and the attorney ad litem testified that the children have been doing very well since their removal from Father's custody. The sixth *Holley* factor weighs in favor of her termination.

As discussed above, Father has frequently been homeless and does not have a permanent residence. The seventh factor weighs in favor of termination. *See id.*

### 6. The Acts or Omissions of the Parent that May Indicate that the Existing Parent-Child Relationship is not a Proper One; Any Excuse for the Acts or Omissions of the Parent

The Department argues that the record contains several acts and omissions which indicate that the relationship between Father and the children might be improper. We agree. Evidence considered under the other *Holley* factors is also relevant in analyzing the eighth and ninth factors. *See In re D.W.*, 445 S.W.3d 931. As we explained in greater detail under the second and third factors, the two older children were removed initially because of unexplained medical injuries. Additionally, Father has only visited his twins a couple of hours over the last several years. Father does not deny that he completely failed to attend any of the services designed to help him improve his parenting skills and have the children returned to him.

Regarding any excuses for his omissions or acts, Father offers none other than his incarceration and lack of reliable transportation. However, Guzman testified that transportation was made available to Father and that there were periods of time when Father was not incarcerated, yet Father still failed to complete any services. Overall, Father gives no explanation as to how his care of the children would improve going forward. The eighth and ninth factors weigh in favor of termination.

13

## C. Summary

Looking at the evidence of the *Holley* factors in the light most favorable to the trial court's verdict, we conclude that the evidence is legally sufficient because a reasonable trier of fact could form a firm belief or conviction that termination was in the best interest of the children. *See In re J.O.A.*, 283 S.W.3d at 344. Likewise, we conclude the evidence is factually sufficient because the disputed evidence regarding the *Holley* factors is not so significant it would prevent a reasonable factfinder from forming a firm belief or conviction that termination was in the children's best interests. *See id.* We overrule Father's sixth issue.

## V. CONCLUSION

We affirm the trial court's judgment.

NORA LONGORIA
Justice

Delivered and filed the
28th day of December, 2017.

14