

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00098-CV

IN THE INTEREST OF B.C. AND P.C., CHILDREN

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 43,460, Honorable James M. Mosley, Presiding

July 30, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

In this accelerated appeal, appellant, Father, seeks reversal of the trial court's judgment terminating his parental rights to his children, B.C. and P.C.[1] Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings on four predicate grounds and its finding that termination is in the best interest of the children. Because we conclude that the evidence was legally and factually sufficient, we affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we refer to the children by their initials, and we identify the parents as Father and Mother. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).

## Background

In April of 2018, the Texas Department of Family and Protective Services became involved with four-year-old B.C. and twenty-two-month-old P.C. after allegations of drug use by Mother, her paramour, and the maternal grandparents were reported to the Department. The report also alleged drug use by the father of the children and that the parents "leave the drugs accessible to the children." As a part of the Department's investigation, drug testing was performed. Mother tested positive for marijuana and her paramour tested positive for cocaine, methamphetamine, and marijuana. B.C. tested positive for cocaine. The Department obtained an order of emergency protection of B.C. and P.C. and removed them from Mother's care. Shortly after the children were removed, the Department located Father and he was interviewed.

According to Father, the last time that Mother allowed him to visit B.C. and P.C. was in early February 2018. At the time Father was interviewed, he was unemployed and staying with his mother at her home, but he also stayed at his girlfriend's residence. Father admitted to using marijuana and acknowledged his recent arrest for possession of a controlled substance. The Department requested that Father submit to a drug test and the results were positive for cocaine and marijuana. A visitation schedule was prepared, and Father was permitted to visit with B.C. and P.C. for one hour, once a week, under the Department's supervision.

Following an adversary hearing, the Department was appointed temporary managing conservator and B.C. and P.C. were placed in a foster home. [2] The court named Mother and Father as possessory conservators and ordered each parent to comply with a service plan developed by the Department. The Department was also ordered to conduct home studies on the homes of the paternal grandmother, a paternal aunt, and the maternal great-grandmother as possible placements for B.C. and P.C.

The Department developed a separate plan of services for Mother and Father and each plan had a stated goal of reunification with the children. Within a few weeks after the adversary hearing, Mother began attending Narcotics Anonymous meetings and making significant progress toward completing the services outlined in her plan of service. Father, on the other hand, did not participate in any services provided by the Department except for three or four supervised visits with B.C. and P.C. The caseworker testified that she spoke with Father on the telephone and tried to arrange a meeting with Father to review the services in the plan, but the meeting did not take place. The caseworker told Father, "You've got a service plan. You've got to work services." Father's response was, "Okay." The caseworker mailed a copy of Father's plan of service to his mother's home, which is the last place the caseworker knew that Father lived. An order reflects that Father appeared at the status hearing on July 24, 2018. The last contact that Father had with B.C. and P.C. or the Department was in July of 2018.

---

[2] The maternal grandparents were considered as a placement option until the Department received the results of their drug testing. The maternal grandmother tested positive for cocaine, and the maternal grandfather tested positive for marijuana.

3

The home study on the home of the paternal grandmother was approved. The paternal grandmother indicated during her interview that she wants to keep the children temporarily until they are returned to Mother, but she is willing to keep the children long-term and adopt them if they are unable to be returned to their parents.

By the end of October 2018, Mother had completed all of her services, and the court returned B.C. and P.C. to Mother's home pursuant to a monitored return order.

On February 5, 2019, the trial court held a final hearing concerning termination of Father's parental rights to B.C. and P.C. Father did not appear, but his counsel appeared on his behalf. After testimony, the trial court terminated Father's parental rights on the grounds set forth in Texas Family Code section 161.001(b)(1)(B), (C), (N), and (O), and found that termination would be in B.C.'s and P.C.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018).[3] The court appointed Mother as the managing conservator of B.C. and P.C. and dismissed the Department from the case.

Standard of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section__" or "§ __."

so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Applicable Law

Involuntary termination of parental rights is a serious proceeding implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v.*

*Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick,* 685 S.W.2d at 20. However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interest. *In re T.G.R.-M.*, 404 S.W.3d 7, 12 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019); *In re J.F.C.,* 96 S.W.3d at 264. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order

if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ.) The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ.).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, as long as those determinations are not themselves unreasonable. *Id.*

Analysis

Sufficiency of the Evidence under § 161.001(b)(1)(B), (C), (N), (O)

In his first issue, Father challenges the legal and factual sufficiency of the evidence to support the termination of his parental rights under section 161.001(b)(1)(B), (C), (N), and (O). Only one statutory ground is required to support termination. *See In re A.V.*, 113 S.W.3d at 362. We limit our analysis of the sufficiency of the evidence in support of subsection (N).

Constructive abandonment, § 161.001(b)(1)(N)

A trial court may terminate parental rights based on section 161.001(b)(1)(N) if the court finds by clear and convincing evidence that the parent has:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than six months, and:
>
> (i) The department has made reasonable efforts to return the child to the parent;
>
> (ii) The parent has not regularly visited or maintained significant contact with the child; and
>
> (iii) The parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(b)(1)(N).

It is not disputed that at the time of trial in February 2019, the Department had been B.C.'s and P.C.'s temporary managing conservator for eight consecutive months and that Father had not regularly visited or maintained significant contact with the children since July 2018. Father only challenges the court's findings that the Department made

8

reasonable efforts to return the children to him and that he demonstrated an inability to provide the children with a safe environment.

"Reasonable efforts" to reunite a parent and his children can be satisfied through the preparation and administration of a service plan. *In re D.S.A.*, 113 S.W.3d 567, 570-72 (Tex. App.—Amarillo 2003, no pet.); *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.). With respect to the Department's efforts to return the children to Father, there was evidence the Department prepared a plan of services on June 13, 2018, and that the plan was filed with the court on July 17, 2018. A family service plan is designed to reunify a parent with a child who has been removed by the Department. *Liu v. Dep't of Family & Protective Servs.*, 273 S.W.3d 785, 795 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Implementation of a family service plan by the Department is ordinarily considered a reasonable effort to return children to a parent. *In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.). Further, the record shows that the family service plan of June 13, admitted at trial, reflects a goal of family reunification. During the time that the plan was created, the caseworker facilitated Father's supervised visits with the children, although that visitation abruptly ceased as did Father's participation in the case in July of 2018. There was also evidence that shortly after the Department began its investigation, Father listed his mother as a possible placement for the children, and the Department completed an evaluation of her home. The caseworker testified that she sent a copy of Father's service plan to his mother's address because she was unable to locate Father for a face-to-face meeting to discuss the plan. It was the caseworker's understanding that Father last resided with his mother. The caseworker also testified that she discussed the service plan with Father in a phone conversation

while trying to arrange a meeting with him. Although Father agreed to work his services, he failed to follow through. Father was aware from the time that the children were taken into care by the Department that his parental rights were in jeopardy and that he was required to complete services offered by the Department in order to be reunited with B.C. and P.C.

A factfinder may consider several factors in finding that the evidence demonstrated a parent's inability to provide the children with a safe environment, including the parent's participation or lack thereof in services and lack of steady housing and employment. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 310 (Tex. App.—El Paso 2009, no pet.); *In re J.J.O.*, 131 S.W.3d 618, 630 (Tex. App.—Fort Worth 2004, no pet.).

At the beginning of the Department's investigation, Father was unemployed and he admitted to a recent arrest for possession of a controlled substance. His hair follicle drug test was positive for cocaine and marijuana. The mother of B.C. and P.C. had restricted his access to the children due to his drug use several months before the Department became involved. During the pendency of the case, Father did not avail himself of any services offered by the Department except three or four supervised visits with B.C. and P.C. There was no evidence presented at trial concerning Father's present ability to care for two young children, ages five and two. From these facts, one can reasonably deduce that Father lacked the ability or desire to provide B.C. and P.C. with a safe and stable environment. Further, the failure to complete a family service plan demonstrates an inability to provide the children with a safe environment. *See In re A.D.*, 203 S.W.3d 407, 411-12 (Tex. App.—El Paso 2006, pet denied).

Father urges that he can provide a safe environment for B.C. and P.C. and points to the approved home study of the paternal grandmother. Although the paternal grandmother's home was approved as a placement, she indicated that she was willing to keep B.C. and P.C. temporarily until they are returned to their mother, and only considered a long-term placement in the event that neither parent could keep the children. There was no evidence presented that Father intended to relinquish his parental responsibilities to his mother and there was no testimony that the paternal grandmother visited the children or maintained any relationship with the children during the pendency of the case. Likewise, Father visited the children as specified by the Department during the first two months the children were in the care of the Department, but Father ceased all contact with the Department and stopped visiting the children eight months before the trial. Further, the record demonstrates Father was arrested for possession of a controlled substance very close to the time the children were removed and he tested positive for cocaine and marijuana at the beginning of the Department's investigation. Due to Father's history of drug use and his failure to engage in services, his ability to provide a safe environment for B.C. and P.C. is highly suspect.

Viewing all the evidence in the light most favorable to the termination judgment and disregarding all contrary evidence that a reasonable factfinder could disregard, we conclude a reasonable factfinder could have formed a firm belief or conviction that the evidence supports the trial court's termination of Father's parental rights to B.C. and P.C. pursuant to section 161.001(b)(1)(N). We also find the evidence supports the trial court's order when the evidence is viewed in a neutral light and considering all contravening evidence. We resolve Father's first issue against him.

Best Interest of the Children

In his second issue, Father did not brief or challenge the best interest finding; rather, he states "[t]he grounds for termination were not met in the first prong of the statute, so the best interest question does not come into the case." We conclude that Father has not preserved any best interest complaint for our review. *See In re K.C.B.*, 280 S.W.3d 888, 896 (Tex. App.—Amarillo 2009, pet. denied) (parent waived sufficiency complaint due to inadequate briefing); TEX. R. APP. P. 38.1(i). Consequently, we overrule issue two.

Conclusion

The judgment of the trial court terminating Father's parental rights is affirmed.

Judy C. Parker
Justice