

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00568-CV

**IN THE INTEREST OF B.J.J.T.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA02398
Honorable Richard Garcia, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: May 19, 2021

AFFIRMED

Sara[1] appeals the trial court's order terminating her parental rights to the child, B.J.J.T. We affirm the trial court's order.

### BACKGROUND

On November 26, 2019, the Department of Family and Protective Services filed an original petition, seeking temporary managing conservatorship of B.J.J.T. and termination of the parental rights of B.J.J.T.'s mother, Sara. The Department's original involvement with this child began in 2016 when they filed a SAPCR moving for termination of Mom's parental rights. At that time, the Department terminated the parental rights of B.J.J.T.'s father and mistakenly believed it had also

---

[1] To protect the identity of the minor child, we refer to appellant, grandmother, and great aunt by their first names and to the child by his initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

terminated Mom's rights. The Department discovered the mistake in 2019, while B.J.J.T.'s great aunt San Juana was attempting to adopt him.

After the Department filed the 2019 petition, the trial court ordered an attorney *ad litem* for Sara and an attorney and guardian *ad litem* for B.J.J.T. The following month the court named the Department temporary managing conservator for B.J.J.T., named Sara temporary possessory conservator, and ordered her to comply with the service plan.

The case proceeded to a bench trial in September 2020. Sara did not participate in the trial. The evidence at trial included Sara's family plan and the testimony of two witnesses: the Department's caseworker, Tracy Diaz, and Sara's own mother, Mary. After trial, the court found by clear and convincing evidence that Sara constructively abandoned the child, failed to comply with court-ordered provisions of the family service plan, used a controlled substance in a manner that endangered the child and failed to complete a substance abuse program. *See* TEX. FAM. CODE § 161.001(b)(1)(N), (O) & (P). The trial court also found by clear and convincing evidence that termination of Sara's parental rights was in the child's best interest. *See id.* § 161.001(b)(2). The trial court terminated B.J.J.T.'s relationship with Sara and appointed the Department permanent managing conservator of B.J.J.T.

Sara timely appealed the trial court's order. She argues the evidence presented by the Department was not legally or factually sufficient to support the court's finding under subsection (i) of section 161.001(b)(1)(N) of the Family Code and its finding that termination of her rights was in B.J.J.T.'s best interest.

**DISCUSSION**

**Standard of Review**

To terminate parental rights under section 161.001 of the Texas Family Code, the Department must prove by clear and convincing evidence one of the grounds in subsection

161.001(b)(1) and that termination is in the best interest of the child. *See id.* § 161.001. In assessing the legal and factual sufficiency of the evidence to support the trial court's findings, we employ a heightened standard of review to determine whether the trial court could have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable credibility determinations. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). To give proper deference to the factfinder's role, we must assume it resolved disputed evidence in favor of its findings if a reasonable factfinder could have done so. *J.F.C.*, 96 SW. 3d at 264.

**Best Interest**

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, a court must also presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *See C.H.*, 89 S.W.3d at 27-29. In determining the best interest of a child, a court should consider the factors set out in section 263.307 of the Family Code.[2] Courts also apply the

---

[2] These factors include: the child's age and physical and mental vulnerabilities; the frequency and nature of out-of-home placements; the magnitude, frequency, and circumstances of the harm to the child; whether the child has been

non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

This list of factors is not exhaustive, and not every factor must be proven for a court to find that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. Instead, we must consider "the totality of the circumstances in light of the *Holley* factors" to determine whether sufficient evidence supports the challenged finding. *In re B.F.*, No. 02-07-334-CV, 2008 WL 902790, at *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.). If the facts are limited due to the absence of a thoroughly developed record, the evidence still may be sufficient as long as the cumulative weight and substance of these limited facts establish that termination of parental rights is in the child's best interest. *Id.*

The evidence shows the Department received its first referral regarding B.J.J.T. when he was born positive for illegal drugs in 2016. After the 2016 case was opened, Sara continued to test

---

the victim of repeated harm after intervention by the department; whether the child is fearful of returning to the child's home; the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; whether there is a history of abusive conduct by the child's family or others who have access to the child's home; whether there is a history of substance abuse by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills; and whether an adequate social support system consisting of an extended family and friends is available to the child. *See* TEX. FAM. CODE § 263.307.

positive for illegal drugs and as a result, at three months old, the Department removed B.J.J.T. from Sara's care and placed him with San Juana, who was already permanent managing conservator for two of his brothers. When the present case was filed in November 2019, the Department remained concerned about Sara's ability to safely parent B.J.J.T. because of Sara's admitted past history of methamphetamine use. Sara was arrested earlier that year for possession of a controlled substance. The arrest resulted in her being jailed in July 2020 and then transferred in September to a mentally impaired offender facility (MIOF) where she was during trial and was expected to remain for four months. The Department was also concerned about Sara's ability to care for B.J.J.T. during periods of time when she is not addressing her mental health, including a history of schizophrenia and anxiety.

The trial court's temporary orders, signed in December 2019, ordered Sara to undergo a psychiatric evaluation, submit to a drug assessment, participate in counseling, take a parenting class, and comply with all provisions of the service plan to be prepared by the Department. Department caseworker Tracy Diaz testified the Department developed a service plan and set up services for Sara. Diaz testified she explained to Sara in January 2020 the services and classes required by the service plan and believed Sara understood her responsibilities under the plan. At that time, Sara was undergoing counseling at the Center for Health Care Services and was ordered to continue those services as a part of the plan. Sara was also required to participate in a psychiatric evaluation and follow all the evaluator's recommendations, including taking psychotropic medications. The plan further required Sara to participate in random drug testing at an approved lab, complete a drug and alcohol assessment at the Center, and follow the Center's recommendations as to her course of treatment. The evidence admitted at trial shows Sara made no effort to work with Diaz or the Center to undertake a psychiatric evaluation or complete a drug and alcohol assessment. The trial court reasonably could have credited this evidence as supporting

its best-interest finding. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) (noncompliance with service plan is probative of child's best interest)

Sara was also required to find and maintain stable employment and to provide proof of employment to Diaz. When Diaz spoke with Sara about the plan in January 2020, Sara was unemployed and lived with her mother, Mary. Mary testified she cleaned houses, her company allowed her to take Sara to work with her, and she would take Sara to work with her so she would have some money. There is no evidence that in the eight months before trial Sara was ever formally employed with the cleaning company, secured any other job, or took advantage of the job search services at the Texas Workforce Center.

The plan required Sara to provide stable housing for B.J.J.T., and the Department referred her to San Antonio Housing Authority. Mary testified Sara lived in McAllen, Texas for an unknown period of time before moving in with her at some point in 2019 or 2020. The evidence shows that sometime in the spring of 2020 they moved into a new home with Sara's brother in a different part of San Antonio. Diaz visited Sara at her mother's home but did not visit the home where they lived with Sara's brother. After living with Sara's brother for a brief period of time, Sara was jailed in July 2020 in connection with the 2019 arrest for possession of a controlled substance. Then, in September, Sara was transferred pursuant to a court order to MIOF, where Mary expected her to remain for four months. Sara's repeated change of address and time in jail or MIOF would make B.J.J.T.'s home environment extremely unstable if he lived with Sara, threatening his physical and emotional well-being. *See In re N.R.V.*, No. 04-14-00844-CV, 2015 WL 2255088, at *3 (Tex. App.—San Antonio May 13, 2015, no pet.) (mem. op.) (holding trial court reasonably could have credited evidence of inability to maintain lifestyle free from arrests and incarcerations supported best-interest finding).

Diaz also testified Sara showed little willingness or ability to develop parenting skills. The plan required Sara to participate in a basic protective parenting course through Family Service Association, understand child development, and demonstrate an ability to be a nurturing parent. Although Sara initially verbalized she wanted to be a part of B.J.J.T.'s life, the evidence shows she did not express a desire to have a parent-child relationship with B.J.J.T., take any parenting classes, or make any other effort to show she cared for him by, for example, sending cards, letters, or gifts.

B.J.J.T. was four years old at the time of trial and had lived with San Juana since he was three months old. When, as here, a child is too young to express his desires, the trial court may consider whether the child has bonded with current caregivers, is well cared for by them, and has spent minimal time with the parent. *See In re D.A.B.*, No. 04-19-00629-CV, 2020 WL 1036433, at *7 (Tex. App.—San Antonio Mar. 4, 2020, no pet.) (mem. op.). Diaz testified B.J.J.T. has bonded with his brothers and is very bonded with San Juana, crawling into her lap and hanging onto her upon Diaz's arrival at their home. B.J.J.T. has a heart condition and sleep apnea, and San Juana has arranged for medical care for both of his conditions, along with dental appointments. San Juana has also established a daily routine for him. Diaz also testified San Juana has a large extended family that supports her.

The trial court initially did not allow Sara visits with B.J.J.T. But, even after the court authorized supervised visits, it was not until June 2020 that Sara had her first, and only, visit with him. After that visit, Diaz sent Sara a schedule for July visits, but Sara never followed up. Nor did Sara ask for Diaz's assistance to coordinate a visit with jail officials. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 312 (Tex. App.—El Paso 2009, pet. denied) (considering minimal efforts to visit child as support for finding that termination is in child's best interest).

Sara argues Diaz's testimony about San Juana's ability to meet B.J.J.T.'s emotional and physical needs and Sara's lack of parenting abilities was conclusory. We disagree. Diaz testified San Juana and B.J.J.T. had a strong bond, demonstrated by B.J.J.T.'s behavior during Diaz's visits, and San Juana managed B.J.J.T.'s health and well-being effectively by establishing a daily routine for him and ensuring he received medical care for his health conditions. The evidence also shows Diaz explained to Sara that she was required to complete a basic parenting class in order to show she was capable of parenting B.J.J.T. Despite eight months to do so, Sara never enrolled in or completed a parenting course and never asked about B.J.J.T.'s health or doctor appointments. *See O.N.H.*, 401 S.W.3d at 687 (noncompliance with service plan is probative of child's best interest).

Sara argues there was no evidence that she continued engaging in illegal substance use or continued to have a drug problem. We disagree. Sara admitted to Diaz she had drug issues for the past several years, had multiple arrests for possession of controlled substances, including the year before trial, did not complete a drug assessment, and made no effort prior to her incarceration to address those issues by following the recommendations of the plan during the eight months before trial. *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) (holding trier of fact may measure parent's future conduct by past conduct in determining best interest). Sara's repeated arrests and incarcerations related to substance use exposes B.J.J.T. to uncertainty and instability in a home environment with Sara and threatens his emotional well-being. *See In re J.J.C.B.R.*, No. 04-19-00297-CV, 2019 WL 4453734, at *2 (Tex. App.—San Antonio Sept. 18, 2019, no pet.) (mem. op.) (trial court permitted to consider how parent's repeated incarceration can negatively impact child's living environment and emotional well-being).

Sara also argues the trial court did not provide her with an adequate amount of time to perform her services because the trial took place approximately three months before the December 2020 "achievement dates" in the family services plan. Sara identifies no authorities or citations in

support of her argument. *See* TEX. R. APP. P. 38.1(i) (brief must contain, among other things, appropriate citations to authorities). Construing the argument liberally, Sara appears to contend the trial court improperly denied her a continuance when she indicated she was not ready for trial. *See Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam); *In re R.F. III*, 423 S.W.3d 486, 489 (Tex. App.—San Antonio 2014, no pet.). We review the denial of a motion for continuance for abuse of discretion. *R.F.*, 423 S.W.3d at 490. Whether this court might have ruled differently under the same circumstances does not warrant a conclusion that the trial court abused its discretion. *Id.*

Texas Rule of Civil Procedure 251 provides that no continuance shall "be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. When a movant fails to comply with these requirements, we must presume the trial court did not abuse its discretion in denying the motion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *R.F.*, 423 S.W.3d at 490. Additionally, in determining whether to deny a motion for continuance, the trial court may consider the procedural history of the case. *In re J.G.*, No. 12-18-00111-CV, 2018 WL 5318008, at *2 (Tex. App.—Tyler Oct. 29, 2018, pet. denied) (mem. op.).

The trial court set the case for a September 28, 2020 trial on the merits during the February 2020 status hearing. The court confirmed the setting during the June 3, 2020 permanency hearing, at which both Sara and her attorney appeared by telephone. On September 28, Sara's attorney was present for trial, Sara was not present, and the court indicated it was not able to reach Sara by telephone that morning. Sara's attorney announced "not ready" but did not offer the court any explanation. The court denied the continuance, explaining it called Sara that morning so she could participate, and she had appeared previously, implying she was aware of the scheduled trial. *See J.G.*, 2018 WL 5318008, at *2. The evidence admitted at trial suggests neither the court nor Sara's

attorney was initially aware that Sara was in MIOF. Nevertheless, at the end of testimony, counsel for Sara asked for a "short delay" of two weeks, but the court impliedly denied it, stating its order on termination would be forthcoming. Sara's attorney did not offer an affidavit in support of a continuance, did not proclaim any agreement on a continuance between the parties, or otherwise identify a basis for a continuance by operation of law. *See* TEX. R. CIV. P. 251.

Sara contends she required more time to comply with the service plan because she was not permitted visits initially, had a virtual visit in June, and was in jail when she was offered further visits in July. Although the trial court authorized visits beginning in February, there was no evidence Sara expressed any interest in seeing B.J.J.T. before her June visit, reached out to Diaz to help arrange virtual visits for her in jail, or made efforts to become a better parent. Accordingly, the trial court did not abuse its discretion in denying the motion. *R.F.*, 423 S.W.3d at 492.

The evidence admitted at trial permits a reasonable inference that at the time of trial Sara had not adequately addressed her substance use or her mental health, that she could not maintain steady employment or stable housing for B.J.J.T, that she was not capable of parenting B.J.J.T., and that she would not be able to meet B.J.J.T.'s present and future physical and emotional needs. Having reviewed the evidence admitted at trial, we hold a factfinder could have reasonably formed a firm belief or conviction that termination of Sara's parental rights is in the child's best interest. *See J.F.C.*, 96 S.W.3d at 266. We therefore hold there is legally and factually sufficient evidence to support the trial court's best-interest finding.

**Grounds for Termination**

Termination of a parent's rights may be supported by a finding of only one predicate ground. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Sara challenges the sufficiency of the evidence supporting the trial court's finding under section 161.001(b)(1)(N). Because Sara does not challenge the sufficiency of the evidence to support the trial court's findings under sections

161.001(b)(1)(O) or (P), she has waived any complaint about the sufficiency of the evidence to support those findings and the unchallenged grounds support the trial court's order. *In re J.J.S.*, No. 04-17-00747-CV, 2018 WL 1072336, at *2 (Tex. App.—San Antonio Feb. 28, 2018, pet. denied) (mem. op.); *In re C.P.V.Y.*, 315 S.W.3d 260, 269 (Tex. App.—Beaumont 2010, no pet.).

## CONCLUSION

Because the evidence supports the trial court's best interest finding and because the trial court's findings on unchallenged predicate grounds support the termination of Sara's parental rights, we affirm the trial court's order of termination. *See J.J.S.*, 2018 WL 1072336, at *2; *C.P.V.Y.*, 315 S.W.3d at 269.

Luz Elena D. Chapa, Justice